UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BUDDY M. BROCHU,

    Plaintiff

v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

Civil Action No. 10-11848
District Judge Julian Abele Cook, Jr.
Magistrate Judge R. Steven Whalen

## REPORT AND RECOMMENDATION

Plaintiff Buddy M. Brochu brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Social Security disability benefits. Before the Court are the parties' cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Plaintiff motion be DENIED and Defendant's motion GRANTED.

## PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Insurance ("SSI") April 23, 2007, alleging disability as of November 8, 2006 (Tr. 83-87, 88-90). After the initial denial of benefits, Plaintiff made a timely request for an administrative hearing, conducted by Administrative Law Judge ("ALJ") Michael F. Wilenkin on June 25, 2009 in Oak Park, Michigan (Tr. 17). Plaintiff, represented by attorney Deanna Lee Kaniowski, testified, as did a Vocational Expert ("VE") (Tr. 20-33, 33-38). On July 14, 2009, ALJ Wilenkin determined that Plaintiff was not disabled (Tr. 16). On March 4, 2010, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review on May 6, 2010.

## BACKGROUND FACTS

Plaintiff, born June 30, 1962, was 47 when the ALJ issued his decision (Tr. 83). He completed high school and worked previously as a furnace operator, hi-lo driver, fast food worker, and stocker (Tr. 99, 104). Plaintiff's application for DIB alleges disability as a result of back pain, hypertension, an enlarged heart, depression, and a bipolar disorder (Tr. 98).

**A. Plaintiff's Testimony**

Plaintiff testified that he lived in a single-family home in Macomb, Michigan with his girlfriend (Tr. 20). He reported that he did not hold a current driver's license (Tr. 20). He denied training beyond 12th grade (Tr. 21). He indicated that his past relevant work consisted of managing a fast food restaurant and furnace work for a manufacturing company (Tr. 21). He reported additional work as a Hi-Lo driver and a brief stint as a warehouse stocker (Tr. 22). He testified that he had been terminated from the fast food position after yelling at a customer (Tr. 23).

Plaintiff opined that his bad temper as a result of bipolar syndrome rendered him disabled, adding that he had been seeing a social worker for monthly psychological counseling for the past 18-24 months (Tr. 24-25, 28). He noted that he also saw a psychiatrist every four to five months for medication reviews (Tr. 25). In addition to bipolar syndrome, Plaintiff alleged that he experienced depression, noting that he experienced a general loss of interests, an inability to get along with others, and cognitive problems (Tr. 26-27). He denied that his mental conditions caused him to spend excessive amounts of money or engage in risky activities (Tr. 27). He alleged that although he currently took Abilify, Ambien, and Lexapro, he continued to experience anger management problems (Tr. 28). Plaintiff conceded that if he could control his anger and depression, he would be capable of working (Tr. 29). He reported that he took care of his own personal needs, spending most of each day taking walks and watching television (Tr. 30-31). In response to questioning by his attorney, Plaintiff noted that his medication doses had been adjusted upward after he experienced continued anger management problems (Tr. 31-32). Plaintiff alleged that despite medication, he continued to experience racing thoughts on a daily basis (Tr. 32).

**B. Medical Evidence**

### 1. Treating Sources [1]

Treating notes from April, 2003 show that Plaintiff experienced migraine headaches and depression (Tr. 163-167). The same month, imaging studies showed a slightly enlarged heart,

---

[1] Plaintiff's arguments for remand focus exclusively on his mental conditions. The summation of his treatment for physical conditions is included for background purposes only.

but otherwise unremarkable results (Tr. 156, 197-198). September, 2003 imaging studies of the small bowel were likewise unremarkable (Tr. 196). In April, 2004, Plaintiff was referred by treating physician Christopher A. Schnurer D.O. for "psych issues" (Tr. 214). In January, 2005, Plaintiff, currently working, reported migraines (Tr. 188). His physical examination was unremarkable (Tr. 186).

In March, 2005, N.B. Murthi, M.D. completed an intake assessment of Plaintiff, diagnosing him with bipolar disorder and assigning him a GAF of 40[2] (Tr. 338). Plaintiff appeared mildly depressed but was cooperative and appropriately dressed and groomed (Tr. 337). Plaintiff denied hallucinations, but reported mood swings (Tr. 336-337). May, 2005, treating notes show that Plaintiff exhibited good grooming and hygiene (Tr. 334). February, 2006 treating notes state that his mood was stable (Tr. 329). Plaintiff reported that his mood was stable when taking his medication as directed (Tr. 326). He was assigned a GAF of 50[3] (Tr. 325). In April, 2006, Plaintiff reported "good health" and a stable mood (Tr. 324). His grooming and hygiene were deemed good (Tr. 324). A January, 2007 medication review stated that he "present[ed] stability and compliance with his present medication regimen and symptom control," but continued to struggle with self-direction (Tr. 309). In March, 2007, Plaintiff showed "no evidence of poor grooming" but exhibited a mild blunt effect (Tr. 293). In June, 2007, Plaintiff was cooperative with a logical thought process (Tr. 282). In December, 2007, he was described as mildly anxious with mild irritability and "very mild occasional" depression (Tr. 265-266).

Plaintiff again sought treatment in July, 2008 (Tr. 396). He appeared depressed with a flat effect (Tr. 395). He received a GAF of 38 (Tr. 395). Plaintiff noted that his girlfriend helped him

---

[2] A GAF score of 31-40 indicates "some impairment in reality testing or communication OR major impairment in several areas such as work, school, family relations, judgment, thinking or mood." *Id.* Additional documentation states that Plaintiff had a GAF of 40 upon *admission* and a 28 at the time of discharge (Tr. 192). However, this contradicts treating notes which state that Plaintiff's condition had stabilized over the course of the four day inpatient stay (Tr. 187).

[3] A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM-IV-TR* )(4th ed.2000).

financially and that he spent his leisure time woodworking (Tr. 393). Plaintiff's key impairments were deemed depressive symptoms and "poor social/coping skills" (Tr. 390). He appeared cooperative (Tr. 384). Plaintiff reported depression as a result of job loss and relationship problems but exhibited a clear thought process (Tr. 382). He was deemed independent in all self care activities (Tr. 375). The assessment noted that Plaintiff had a history of domestic violence and two previous DUIs (Tr. 371). Additional assessments show that Plaintiff was assigned a GAF of 45 (Tr. 396). Treating notes created later the same month state that he was "cooperative and compliant" (Tr. 355).

In August, 2008, Dr. Murthi, noting that he had treated Plaintiff since March, 2005, found moderate limitations in understanding and memory, accepting criticism, getting along with coworkers, and reacting to changes in the work settings (Tr. 261). He found that Plaintiff had marked limitations in the ability to make independent plans (Tr. 262). Noting Plaintiff's diagnosis of bipolar syndrome, Dr. Murthi assigned him a GAF of 40 (Tr. 262).

In February, 2009, social worker Susan Rohde found Plaintiff markedly limited in the ability to remember detailed instructions, carry out simple instructions, and moderately limited in the ability to carry out detailed instructions (Tr. 397). Rohde also found that Plaintiff experienced exclusively marked social limitations (Tr. 397). She deemed him depressed with poor coping skills and judgment (Tr. 398). The same month, imaging studies of the lumbosacral spine showed mild degenerative changes but were otherwise unremarkable (Tr. 401).

### 2. Consultive and Non-Examining Sources

In May, 2007, psychologist Shelley Galasso Bonanno performed a consultive assessment of Plaintiff on behalf of the SSA (Tr. 215-221). Plaintiff reported sadness and decreased motivation (Tr. 216). He denied any inpatient treatment (Tr. 216). He admitted that he quit his most recent job as a fast food manager after yelling at a customer (Tr. 216). Plaintiff exhibited "cooperative" behavior (Tr. 216). Dr. Bonanno found that Plaintiff's interests "did not appear grandiose, unrealistic, or the manifestation of a delusional system" (Tr. 217). He admitted that he vacuumed and cooked but that his girlfriend did the grocery shopping (Tr. 217). Plaintiff arrived punctually

for the appointment but was sloppily dressed (Tr. 217). Plaintiff's contact with reality appeared adequate with poor self-esteem and limited insight (Tr. 218). He exhibited a blunted effect (Tr. 219). Plaintiff was assigned a GAF of 44(Tr. 220).

In June, 2007, a non-examining Mental Residual Functional Capacity Assessment by psychologist James Tripp found that Plaintiff experienced moderate impairment in the following areas: the ability to remember or carry out detailed instructions, maintain attention for extended periods, sustain an ordinary routine, work in coordination with other, interact appropriately with the general public, accept instruction, get along with coworkers, and maintain socially appropriate behavior (Tr. 222-223). Dr. Tripp concluded that Plaintiff was capable of "simple, sustained, unskilled tasks with persistence," noting further that the treatment records failed to support his allegations (Tr. 334).

Dr. Tripp also completed a Psychiatric Review Technique, finding the presence of an affective disorder (bipolar syndrome) and a personality disorder (Tr. 229-233). Under the "B" criteria, Dr. Tripp found that Plaintiff experienced moderate difficulties in maintaining social functioning and concentration, persistence, or pace but only mild restrictions in daily living and no episodes of decompensation (Tr. 236).

The same month, L. Banerji M.D. performed a physical examination of Plaintiff on behalf of the SSA, noting that despite allegations of back pain, Plaintiff did not take medication (Tr. 240). Remarking that Plaintiff's ability to bend and squat were somewhat impeded by obesity, Dr. Banerji found that his abilities were otherwise unlimited (Tr. 242). He observed that Plaintiff exhibited a good memory with "fair grooming and hygiene" and appropriate responses (Tr. 242).

A Physical Residual Functional Capacity Assessment performed the same month found that Plaintiff could carry 20 pounds occasionally and 10 frequently; sit, stand, or walk for approximately six hours in an eight-hour workday; and push and pull without limitation (Tr. 254). He was limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 255). The Assessment found the absence of manipulative, visual, communicative, or environmental limitations (Tr. 256-257). The Assessor, Demetrio Nasol, M.D. opined that Plaintiff was "not that physically

limited," noting that he continued to drive, walked without an assistive device, shopped, and took care of his own personal needs (Tr. 255).

### C. Vocational Expert Testimony

VE Lawrence S. Zatkin classified Plaintiff's past relevant work as a fast food manager as exertionally light and semi-skilled; hi-lo work as medium to heavy/semi-skilled; and furnace operator, light/unskilled[4] (Tr. 33). Taking into account Plaintiff age, education, and work experience, the ALJ then posed the following question:

> Assume, if you would, that his description of limitations is accurate. All that being the case, would he be able to perform any of his past relevant jobs? If not, would he then be able to perform any work that exists in the state of Michigan or Metropolitan Detroit area?

(Tr. 34).

The VE testified that assuming that Plaintiff's "racing thoughts" were not a distraction, he could perform his past relevant work as a furnace operator or hi-lo driver (Tr. 34). Taking into consideration Plaintiff's need to for limited interaction with coworkers, the VE found alternatively that Plaintiff could perform a reduced number of jobs in the occupations of machine tending, sorting, inspecting, and assembly (Tr. 35). In response to questioning by Plaintiff's attorney, the VE noted that the presence of moderate psychological limitations would not preclude work (Tr. 37). The VE concluded by stating that his testimony was consistent with the information found in the *Dictionary of Occupational Titles* ("DOT").

### D. The ALJ's Decision

Citing Plaintiff's treating records, ALJ Wilenkin found that Plaintiff experienced the severe impairments of depression and bipolar disorder but that neither impairment met or equaled one listed

---

[4] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

in Appendix 1, Subpart P, Regulations No. 4 (Tr. 10).  The ALJ determined that Plaintiff retained the Residual Functional Capacity ("RFC") for "a full range of work at all exertional levels but with the following nonexertional limitations: he is unable to perform work involving any significant contact with co-workers and supervisors or work involving any public contact" (Tr. 11).

The ALJ found that Plaintiff's allegations of disability were "not credible" to the extent that they differed from the above RFC (Tr. 14).  He cited treating medical source notes indicating that Plaintiff exhibited unremarkable behavior when seeking treatment for physical ailments (Tr. 12-13). The ALJ noted that Plaintiff's affect was appropriate during the hearing and that psychological treating records showed that his condition had improved since seeking treatment in February, 2005 (Tr. 13).  The ALJ rejected Dr. Murthi's August, 2007 and Susan Rohde's February, 2009 findings, noting that their own progress notes contradicted findings of disabling limitation (Tr. 13).  He found that Plaintiff could perform the work of a machine tender, sorter, packager, inspector, and assembler (Tr. 15).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir.  1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and  "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir.  1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

**FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

**ANALYSIS**

**A. The Treating Source Analysis**

Plaintiff argues first that the ALJ erred by failing to explain his reasons for rejecting social worker Rohde's finding of *marked* mental impairments. *Plaintiff's Brief* at 7-8. Citing 20 C.F.R. § 404.1527(d)(2), he contends that the social worker's assessment was entitled to controlling weight.[5] *Id.*

Plaintiff's argument fails for multiple reasons. First, the opinion of Rohde, a social worker, is not entitled to the same deference as that of a treating physician. Under 20 C.F.R. §§ 404.1527(a) and 416.927(a)(2), only "acceptable medical sources" can provide medical opinions. An acceptable medical source has been defined to include physicians, psychologist, optometrists, podiatrists, and speech pathologists. 20 C.F.R. §§ 404.1513(a) and 416.913(a). Even assuming for the sake of

---

[5] Although not raised by Plaintiff, the presence of at least two marked restrictions in daily living, social functioning, and concentration, persistence and pace would result in a finding of disability. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04

argument that Rohde's opinion was "uncontradicted," the ALJ was not required to accord it controlling weight. *Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir.2009)(citing *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541 (6th Cir.2004)); 20 C.F.R. § 404.1527(d)(2). The "treating physician rule," is inapplicable to Rohde's opinion.

This is not to say that Rohde's findings are entitled to some consideration. While opinions from non-physician medical sources such as nurse practitioners, physician assistants, and licensed clinical social workers are not technically "acceptable medical sources," SSR 06-03p, 2006 WL 232939, these opinions "should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." *Id.* However, in compliance with SSR 06-03p the ALJ both acknowledged and thoroughly explained his reasons for rejecting Rohde's opinion (Tr. 13-14). He noted that treatment notes from the period preceding the February, 2009 assessment showed that Plaintiff responded to medication, slept well, and engaged in normal activities and hobbies (Tr. 14). He also noted that Rohde's finding of social and functional limitations were contradicted by (among other things) Plaintiff's deportment at the hearing.[6] Because the ALJ's rejection of Rohde's opinion was well explained and well supported, remand on this basis is not appropriate.

**B. Credibility**

Plaintiff also contends that the ALJ did not perform a thorough credibility analysis as required by SSR 96-7p. Asserting that the ALJ's credibility analysis was limited to one sentence, he notes that SSR 96-7p requires consideration of objective medical evidence, medical opinions, and daily activities. *Plaintiff's Brief* at 7-8 (*citing* Tr. 14).

C.F.R. 404.1529(c)(3); 416.929(c)(3) lists the factors to be considered in making a credibility determination:

> "(i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage,

---

[6]Further, Rohde's assessment contains at least one internal contradiction, stating that Plaintiff experienced *marked* limitation in the ability to carry out simple instructions but only *moderately* limited in the ability to carry out detailed ones (Tr. 397).

> effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms . . . and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

The argument that the ALJ's credibility analysis was limited to one sentence amounts to an erroneous reading of the record. The "conclusory" statement, cited above by Plaintiff, is actually the final sentence of a three-page credibility analysis (Tr. 12, ¶1-14, ¶6). Plaintiff is also sketchy as to which of the SSR 96-7p factors was omitted by the ALJ and in fact, a review of the analysis shows that the ALJ touched on all applicable considerations, noting that Plaintiff engaged in variety of daily activities (Tr. 14), was responsive to treatment and medication (Tr. 14), and exhibited normal cognitive abilities during treating session and at the hearing (Tr. 14).

Additional record evidence cast doubts on Plaintiff's credibility. He offered conflicting accounts of whether he was terminated or quit his job as a fast food restaurant manager (Tr. 23, 216). Although treating psychiatric notes repeatedly refer to Plaintiff's grooming and hygiene as "good" (Tr. 293, 324, 334, 337) he showed up for a consultive examination sponsored by the SSA appearing "unshaven," "poorly groomed and attired" and wearing a "soiled and torn" shirt (Tr. 217).

Because the ALJ's analysis is well supported, the deference generally accorded the ALJ's credibility determination is appropriate here. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993); *See also Anderson v. Bowen* 868 F.2d 921, 927 (7th Cir. 1989)(*citing Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986))(An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record'").

In closing, I note that the transcript supports the finding that Plaintiff experienced a certain degree of limitation. My decision to uphold the ALJ's findings should not be read to trivialize these documented limitations. Nonetheless, the RFC and ultimate determination that the Plaintiff was not disabled were well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the above reasons, I recommend that Plaintiff's motion for summary judgment be DENIED and Defendant's motion GRANTED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen  
R. STEVEN WHALEN  
UNITED STATES MAGISTRATE JUDGE

Dated: May 25, 2011

_____

### CERTIFICATE OF SERVICE

I hereby certify on May 25, 2011 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on May 25, 2011: **None.**

s/Michael E. Lang  
Deputy Clerk to  
Magistrate Judge R. Steven Whalen  
(313) 234-5217